IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DCP MIDSTREAM MARKETING, LLC § § § *Plaintiff / Counter-Defendant*, § § v. § § NEXTERA ENERGY MARKETING, LLC § § § *Defendant / Counter-Plaintiff.* § | CIVIL ACTION NO. 4:21-cv-01795 |

### DEFENDANT'S FIRST AMENDED ANSWER AND COUNTERCLAIM

Defendant/Counter-Plaintiff NextEra Energy Marketing, LLC ("NEM") hereby files this Amended Answer,[1] Affirmative Defenses, and Original Counterclaim against DCP Midstream Marketing, LLC ("DCP," "Plaintiff," or "Counter-Defendant"). In support thereof, NEM respectfully shows the Court as follows:

### I.   AMENDED ANSWER

#### *General Denial*

Except as otherwise expressly admitted, NEM denies each and every allegation and averment in the Complaint, including, without limitation, all allegations and averments contained in any headings.  Allegations and averments in the Complaint to which no responsive pleading is

---

[1] NEM's Amended Answer is filed in response to Plaintiff's Original Petition filed in the civil action styled *DCP Midstream Marketing, LLC v. Nextera Energy Marketing, LLC,* Cause No. 2021-25780, in the 80th Judicial District Court of Harris County, Texas, from which the instant suit was removed.

1

required shall be deemed as denied. NEM expressly reserves the right to amend and/or supplement this Answer as may be necessary.

### *Specific Admissions And Denials*

1. NEM lacks knowledge or information sufficient to form a belief with respect to the allegations in this paragraph.

2. NEM admits that it is a limited liability company, however NEM's primary office is located at 700 Universe Blvd, Juno Beach, FL 33408. NEM admits that it may be served with process in Texas through its registered agent, CSC-Lawyers, Inc. at 211 E 7th Street, Suite 260, Austin, Texas 78701.

3. NEM admits the allegations in this paragraph.

4. NEM admits the 80th Judicial District of Harris County, Texas had non-exclusive subject matter jurisdiction over this proceeding, and adds that this court may also exercise jurisdiction given the diversity of the Parties under 28 U.S.C. § 1332, as outlined by NEM's Notice of Removal (Dkt. No. 1), which is incorporated by reference herein.

5. NEM denies the allegations in Paragraph 5 of the Complaint except to the limited extent that NEM admits that this Court may exercise personal jurisdiction over NEM.

6. NEM denies the allegations in Paragraph 6 of the Complaint except to the limited extent that NEM admits venue is proper in the Southern District of Texas, Houston Division.

7. No response is required to Paragraph 7 of the Complaint. To the extent a response is required, NEM denies the allegations or statements contained in this Paragraph as the case is no longer pending in state court.

8. NEM denies the allegations in Paragraph 8 of the Complaint except to the limited extent that NEM admits that Winter Storm Uri occurred in February 2021 causing winter weather in various states throughout the southern and central United States.

9. NEM denies the allegations in Paragraph 9 of the Complaint except to the limited extent that NEM admits that effective as of August 1, 2009, DCP and NEM executed the Base Contract, based on a form published by the North American Energy Standards Board, Inc. NEM admits that the Parties further executed the Addendum. NEM admits that the Parties issued Transaction Confirmations for each purchase and sale transaction, which were always subject to the Base Contract. NEM admits the allegations in subsections (a) and (b) of this paragraph. Regarding subsection (c), NEM admits that Sections 7.1, 7.2, and 7.4 of the Base Contract address the Seller's invoicing procedures, Buyer's payment procedures, and the procedures for disputing an invoice, but NEM denies that those are the only relevant provisions to this dispute.

10. NEM denies the allegations in Paragraph 10 of the Complaint except to the limited extent that NEM admits NEM agreed to purchase daily volumes of gas during February 2021, and NEM admits that the phrase "Pool sales sourced solely by affiliated gathering/processing facilities" appears in the Transaction Confirmations, and in particular NEM denies that the quoted phrase is part of the parties' contract.

11. NEM denies the allegations in Paragraph 11 of the Complaint except to the limited extent that NEM admits that DCP sent an email that included the quoted language that is otherwise the best evidence of its contents.

12. NEM denies the allegations in Paragraph 12 of the Complaint except to the limited extent that NEM admits that the email sent by DCP included the quoted language, which otherwise speaks for itself, and further, NEM lacks sufficient information to admit or deny the factual assertions

regarding the effects of the winter storm as they related to DCP's performance under the Base Contract, and, therefore, denies those allegations.

13.     NEM denies the allegations in this paragraph.

14.     NEM denies the allegations in Paragraph 14 of the Complaint except to the limited extent that NEM admits that DCP supplied volumes of natural gas to NEM and invoiced NEM $20,519,998.11 for those deliveries.

15.     NEM denies the allegations in Paragraph 14 of the Complaint except to the limited extent that NEM admits that it disputed the DCP Invoice on March 25, 2021 and informed DCP that its alleged Force Majeure Notice did not comply with the requirements of Section 11.5 of the Base Contract.

16.     NEM denies the allegations in Paragraph 16 of the Complaint except to the limited extent that NEM admits that its March 25, 2001 letter included the quoted language and otherwise speaks for itself.

17.     NEM denies the allegations in this paragraph except to the limited extent that NEM admits that DCP's position has been to deny liability to NEM.

18.     This paragraph does not contain a factual or legal allegation that requires a responsive pleading.

19.     NEM admits that there are disputes between the parties including, but not limited to, those identified by DCP.

20.     This paragraph does not contain a factual or legal allegation that requires a responsive pleading.  NEM denies that both New York and Texas statutes govern the declaratory relief sought by the parties.

21. This paragraph does not contain a factual or legal allegation that requires a responsive pleading. NEM denies that DCP is entitled to the relief sought in this paragraph.

22. This paragraph does not contain a factual or legal allegation that requires a responsive pleading.

23. NEM denies the allegations in Paragraph 23 of the Complaint except to the limited extent that NEM admits that the Parties validly executed the Base Contract, including the Addendum, and that the Parties executed the Transaction Confirmations, pursuant to which DCP would sell gas to NEM.

24. NEM denies the allegations in Paragraph 24 of the Complaint except to the limited extent that NEM admits that DCP sold over $20 million of gas to NextEra in February 2021.

25. NEM denies the allegations in this paragraph.

26. NEM denies that all conditions precedent have been met, occurred, or have been waived. Specifically, Force Majeure as defined in the Base Contract did not occur to excuse DCP's performance, and DCP did not give notice as required by the Base Contract.

27. This paragraph does not contain a factual or legal allegation that requires a responsive pleading.

28. NEM denies that DCP is entitled to attorneys' fees as requested in this paragraph.

## II.    AFFIRMATIVE DEFENSES

In the alternative, subject to its specific denials, and pursuant to Rule 8 of the Federal Rules of Civil Procedure, NEM asserts the following affirmative defenses cumulatively and alternatively. NEM reserves the right to plead any additional defenses or affirmative defenses that may be applicable based on evidence revealed during discovery. By identifying defenses as "affirmative defenses," NEM does not intend to assume a burden otherwise placed upon another party by

operation of law. NEM does not intend to suggest that any such matter is not part of DCP's burden of proof and/or not an element of DCP's prima facie case against NEM. DCP bears the burden of proof on all matters necessary to prove the causes of action asserted in the Complaint and the alleged damages.

29. DCP's claims against NEM are barred, in whole or in part, by DCP's prior material breach.

30. DCP's claims against NEM are barred, in whole or in part, by the doctrines of estoppel, quasi-estoppel, and/or waiver.

31. DCP's claims against NEM for damages are barred, in whole or in part, by DCP's failure to mitigate damages.

32. DCP is precluded from recovering the damages it seeks from NEM, or those damages must be reduced in whole or in part, based upon the defense of payment or the doctrines of offset and set off.

### III.    ORIGINAL COUNTERCLAIM

#### PARTIES

1. Plaintiff/Counter-Defendant DCP Midstream Marketing, LLC ("DCP") is a Delaware limited liability company that has appeared in this cause.

2. Defendant/Counter-Plaintiff NextEra Energy Marketing, LLC ("NEM") is a limited liability company that has appeared in this cause.

#### JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this suit under 28 U.S.C. § 1332(a)(1) because it is a civil action between citizens of different states and the amount in controversy exceeds $75,000.

4.     Venue is proper under 28 U.S.C. § 1446(a) because the county in which this suit was originally filed is within the district and division of this Court.

## FACTS

5.     DCP and NEM entered into the Base Contract for Sale and Purchase of Natural Gas between DCP Midstream Marketing, LLC and NextEra Energy Marketing, LLC (the Base Contract") and the Addendum to the Base Contract dated August 1, 2009 (the "Addendum"), which the Parties later amended to include the "Addendum". Pursuant to this Base Contract, NEM would purchase certain quantities of gas from DCP on a month-to-month basis.

6.     Section 11 of the Base Contract defines "Force Majeure" to expressly prohibit a party from claiming force majeure where that party "failed to remedy the condition and resume performance of such covenants and obligations with reasonable dispatch" or in cases of "economic hardship, to include without limitation, Seller's ability to sell Gas at a higher or more advantageous price than the Contract Price…" (*See* Base Contract ¶ 11.3(ii-iii)). While a party may provide an initial oral notice of force majeure, the Base Contract requires a subsequent written notice "with reasonably full particulars of the event or occurrence" to be delivered "as soon as possible." (*See* Base Contract ¶ 11.5).

7.     On or around December 7, 2020, the Parties initiated a transaction under the Base Contract, in which DCP would sell—and NEM would purchase—10,000 MMBTUs of natural gas every day from January 1, 2021 through March 31, 2021, which was memorialized in multiple transaction confirmations by the Parties (DCP Deal No. 294543, NEM Transaction No. 3013096). Importantly, DCP committed to supplying the gas at the Panhandle Eastern Pipe Line Field Zone Pool at first of month ("FOM") pricing during the entire period, including February 2021.

8. Despite these contractual obligations to NEM, DCP delivered volumes of gas below the contractual requirement of 10,000 MMBtu per day during the week of February 15, 2021, as follows:

| Date | Quantity Shortfall |
|---|---|
| Feb. 15, 2021 | 4,829 MMBtu |
| Feb. 16, 2021 | 3,697 MMBtu |
| Feb. 17, 2021 | 4,628 MMBtu |
| Feb. 18, 2021 | 3,853 MMBtu |
| Feb. 19, 2021 | 217 MMBtu |
| Total | 16,684 MMBtu |

9. Despite already under-delivering for nearly two days, late on the night of February 16, 2021, DCP sent an email to multiple recipients, with a message that did little more than point to the ongoing winter storm, now known as Winter Storm Uri, without providing the "reasonably full particulars" required by Section 11.5 of the Base Contract. At a minimum, DCP's email should have identified reasonable particulars such as the impacted facilities, and cause of the impacts, and an anticipated return to service. To this day, DCP has not provided the "reasonably full particulars" to NEM—as evidenced by the vague force majeure description in DCP's Petition initiating this action. DCP has yet to provide NEM with facts suggesting an inability to deliver natural gas to the Panhandle Eastern Pipe Line Field Zone Pool during the week of February 15, 2021.

10. Contrary to DCP's mass-email, natural gas *was* available at the delivery point. Not only did gas continue trading but NEM was actually able to cover a majority of DCP's supply shortfall by purchasing replacement gas in the market. Because NEM had to purchase this replacement gas

8

at a higher cost, NEM incurred cover charges totaling $2,022,821.71 for the period from February 15-19, 2021.[2]

11. On information and belief, DCP itself continued delivering and trading natural gas at the pool, evidenced in part by DCP delivering a portion of its firm obligation to NEM during the week at issue. One of the NEM transaction confirmations memorializing the Parties' February firm obligations, Deal No. 3013096, was purchased as standard Panhandle Pool gas with no specific requirements for source of the supply, meaning DCP was not limited to one delivery point when it came to meeting its obligations to NEM. On information and belief, DCP's reason for breaching the Base Contract, in whole or in part, was motivated by its ability to sell gas at higher prices than the contract price with NEM.

12. On March 12, 2021, NEM received an Invoice from DCP (No. ALG5009337) for the month of February indicating a total amount purportedly due of $20,519,998.11. Section 7.4 of the Base Contract required NEM to provide notice of its good faith dispute of the amount of that invoice, and NEM provided timely notice of that dispute on March 25, 2021. In its notice, NEM stated that it would withhold the cover charges and pay only $18,499,417.29. NEM also informed DCP that its Notice of force majeure did not comply with the requirements of Section 11.5 of the Base Contract and therefore, NEM rejected the insufficient Notice.

---

[2] The parties elected the Cover Standard to govern NEM's remedy for DCP's failure to perform. Section 3.2 of the Base Contract states the contractual remedy to include: "the positive difference, if any, between the purchase price paid by Buyer utilizing the Cover Standard and the Contract Price, adjusted for commercially reasonable differences in transportation costs to or from the Delivery Point(s), multiplied by the difference between the Contract Quantity and the quantity actually delivered by Seller for such Day(s) excluding any quantity for which no replacement is available."

13. Notwithstanding DCP's invalid attempt to apply Force Majeure, pursuant to Section 3.2 of the Base Contract, DCP was required to use commercially reasonable efforts to mitigate any curtailments and DCP did not do so. Because DCP failed to mitigate the curtailments, NEM was forced to purchase replacement gas on the spot market and incurred cover costs totaling $2,022,821.71.

## COUNT I – DECLARATORY RELIEF

15. NEM re-alleges and incorporates all allegations previously set forth in paragraphs 1-14.

16. This is a claim for declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq*. for the purpose of determining a question of actual, justiciable controversy between NEM and Plaintiff/Counter-Defendant DCP.

17. NEM hereby requests the Court declare the following:

   a) DCP was obligated to deliver the contract quantity to NEM from February 15-19, 2021, and such obligation was not excused;

   b) DCP cannot claim force majeure for the period from February 15-19, 2021 because Winter Storm Uri did not prevent DCP from trading and delivering gas on the Panhandle Eastern Pipe Line pool;

   c) DCP's alleged notice did not comply with Section 11.5 of the Base Contract;

   d) NEM is entitled to withhold cover charges of $2,022,821.71 from the sum invoiced by DCP for February 2021 deliveries;

   e) NEM's payment of Invoice No. ALG5009337, in the amount of $18,499,417.29 after properly withholding cover charges of $2,022.821.71, satisfies NEM's payment obligations to DCP; and

   f) Such further declaratory relief as may be appropriate.

10

## ATTORNEYS' FEES

18. NEM re-alleges and incorporates all allegations previously set forth in paragraphs 1-18.

19. NEM has incurred, and continues to incur, attorneys' fees in pursuing the relief requested herein. Accordingly, NEM seeks to recover all reasonable attorneys' fees as are equitable and cost, and costs to which it may show itself lawfully entitled, pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.

## CONDITIONS PRECEDENT

20. All conditions precedent have been performed or waived.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant/Counter-Plaintiff NEM prays for the following relief:

1. An order dismissing all claims asserted against it by Plaintiff/Counter-Defendant DCP Midstream Marketing, LLC;

2. Judgment declaring:

   a) DCP was obligated to deliver the contract quantity to NEM from February 15-19, 2021, and such obligation was not excused;

   b) DCP cannot claim force majeure for the period from February 15-19, 2021 because Winter Storm Uri did not prevent DCP from trading and delivering gas on the Panhandle Eastern Pipe Line pool;

   c) DCP's alleged notice did not comply with Section 11.5 of the Base Contract

   d) NEM is entitled to withhold cover charges of $2,022,821.71 from the sum invoiced by DCP for February 2021 deliveries;

11

e) NEM's payment of Invoice No. ALG5009337, in the amount of $18,499,417.29 after properly withholding cover charges of $2,022.821.71, satisfies NEM's payment obligations to DCP; and

f) Such further declaratory relief as may be appropriate.

3. All Costs of court;

4. Reasonable and necessary attorneys' fees as are equitable and just;

5. Such other and further relief to which NEM may be justly entitled, at law or equity.

Respectfully submitted,

**LOCKE LORD LLP**

By: /s/ *David E. Harrell, Jr.*

David E. Harrell, Jr.
Texas State Bar No. 00793905
SDTX ID No. 19392
dharrell@lockelord.com
Alicia Castro
Texas State Bar No. 24069705
SDTX ID No. 2192250
Acastro@lockelord.com
Mia Lorick
Texas State Bar No. 24091415
SDTX ID No. 2470736
Mia.lorick@lockelord.com
Claire Armstrong
Texas State Bar No. 24105440
SDTX ID No. 3150985
Claire.armstrong@lockelord.com
600 Travis Street, Suite 2800
Houston, Texas 77002-3095
(713) 226-1200 (Telephone)
(713) 223-3713 (Telecopy)

**ATTORNEYS FOR DEFENDANT
NEXTERA ENERGY MARKETING, LLC**

12

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing has been served on counsel of record by electronic filing on this the 9th day of June, 2021:

Katherine G. Treistman
Maurice Sayeh
ARNOLD & PORTER
700 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 576-2400
Katherine.Treistman@arnoldporter.com
Maurice.sayeh@arnoldporter.com

Timothy R. Macdonald
Colin O'Brien
ARNOLD & PORTER
1144 Fifteenth Street, Suite 3100
Denver, Colorado 80202
(303) 863-1000
Timothy.Macdonald@arnoldporter.com
Colin.Obrien@arnoldporter.com

ATTORNEYS FOR PLAINTIFF

                                        By: /s/ *David E. Harrell, Jr.*
                                              David E. Harrell, Jr.